Brian M. Mueller (#009222)
**SHERMAN & HOWARD L.L.C.**
7033 E. Greenway Parkway, Suite 250
Scottsdale, Arizona 85254
Phone: (480) 624-2716
Fax: (480) 624-2029
E-mail: bmueller@shermanhoward.com
Firm email for Court documents:
info2@shermanhoward.com

*Attorneys for Movant Tempe Restaurant Partners, LLC*

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re<br><br>JHS VENTURES LLC,<br><br>Debtor<br><br><br>TEMPE RESTAURANT PARTNERS LLC,<br><br>    Movant,<br>v.<br><br>JHS VENTURES LLC,<br><br>    Respondent. | Case No. 2:19-06528-MCW<br><br>Adver. No. 2:21-ap-00023-MCW<br><br>**MOTION FOR PARTIAL SUMMARY JUDGMENT RE RENT CALCULATION AND BREACHES** |

    Pursuant to Bankruptcy Rule 7056 and Local Rule 9013-1, Movant Tempe Restaurant Partners, LLC (the "Landlord"), by and through its attorneys Sherman & Howard, LLC, requests that the Court enter partial summary judgment in its favor, and against debtor/respondent JHS Ventures, LLC (the "Debtor"), finding that:

    1.    On or about October 1, 2009, Landlord and Debtor entered into a written agreement entitled "Triple Net Lease" (the "Lease") regarding commercial property

53204615.1
Case 2:21-ap-00023-MCW    Doc 9    Filed 04/22/21    Entered 04/22/21 13:24:42    Desc
Main Document    Page 1 of 14

located in Tempe, Arizona. The Lease was for a term of ten years, but subject to renewal by the Debtor;

2. In an Order dated December 20, 2019, the Court found that the Debtor had assumed the Lease and properly exercised an option to renew the Lease for an additional five years;

3. As part of that finding, however, the Court did not change or modify the terms of the Lease. And by reaffirming and renewing the Lease, the Debtor agreed to comply with all payment provisions and obligations due from the Debtor to Landlord under the Lease;

4. The Lease provides very specific calculations regarding the rent that the Debtor is obligated to pay during the renewal period, which total **$20,085.19**, plus monthly sales percentage rent, insurance, taxes and any and all other financial obligations required by the Lease.;

5. It is undisputed that the Debtor refuses to pay the amount of rent provided by the Lease for the renewal period, which constitutes a material breach of the Lease;

6. In addition, the Lease imposes upon the Debtor the obligation to (i) pay two percent of its sales during the renewal period, and (ii) provide both monthly sales reports in a form acceptable to Landlord pursuant to generally accepted accounting principles, and an annual report verified by a certified public accountant; and

7. The Debtor refuses to provide the required reports which allow Landlord to verify that the Debtor is paying the proper amount to Landlord. This refusal constitutes a material breach of the Lease.

In support of this Motion for Partial Summary Judgment Re Rent Calculation and Breaches, Landlord submits the following Memorandum of Points and Authorities and contemporaneously filed Statement of Facts in Support of Motion for Partial Summary

Judgment Re Rent Calculation and Breaches ("SOF") which are incorporated by this reference.

Dated this 22nd day of April, 2021

**SHERMAN & HOWARD LLC**

By /s/Brian M. Mueller
 Brian M. Mueller, Esq.
 7033 E. Greenway Parkway, Suite 250
 Scottsdale, Arizona 85254
 *Attorneys for Landlord*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. Introduction**

The Complaint describes a number of breaches by the Debtor under the Lease. This motion is not intended to address all of them, nor even a specific damage amount. Those factual matters will be addressed in the future. This motion is simply intended to address specific matters which involve uncontested facts, and are ripe for legal determinations by the Court.

Those present matters are two: The Debtor refuses (i) to pay the rental amounts due under the Lease for the renewal period; and (ii) to provide the required sales reports. Both of these refusals constitute material breaches of the Lease and events of default, allowing Landlord to exercise its remedies under the Lease.

The two issues will be addressed separately below.

**II. Rent Calculation and Non-Payment of Rent**

The calculation of rent and non-payment can be simply said: The Lease provides that the Debtor will pay a monthly fixed rent of **$20,085.19,** <u>plus</u> monthly sales

percentage rent, insurance, taxes and other amounts during the first five years of the renewal period. The Debtor refuses to pay that amount.

But while this summation is simple, getting to that point is a bit complicated, because it involves a number of unambiguous steps using the Consumer Price Index ("CPI") published by the Bureau of Labor Statistics of the United Stated Department of Labor.

The starting point is the beginning of the Lease, and Paragraph 4.1(a) of the Lease, which provides that, during the first three years of the Lease, the Fixed Rent would be **$12,012.75** per month. (See SOF at ¶ 8).

Paragraph 4.1(b) of the Lease provides that, during the next three years of the Lease – years 4 through 6 – the Fixed Rent will be "increased to an amount calculated by multiplying $12,012.75 by the "CPI Increase" as defined in paragraph 4.2. (See SOF at ¶ 9).

Paragraph 4.2 of the Lease states in part:

> As used herein, "CPI Increase" means a fraction, the denominator of which shall be the Consumer Price Index for all Urban Consumers, Phoenix (1982-1984=100) published by the Bureau of Labor Statistics of the United States Department of Labor (the "CPI") <u>most recently prior to the October 1, 2009</u> and the numerator of which is the CPI of the same calendar month published <u>most recently prior to the applicable adjustment date</u>.

(See SOF at ¶ 10) (emphasis added).

Attached as Exhibit "2" of the SOF is a true and accurate chart of the CPI for all Urban Consumers published by the Bureau of Labor Statistics of the United Stated Department of Labor for the Phoenix metropolitan area for the years 2009 – 2019. (See SOF at ¶ 11).

The applicable CPI under the Lease for the CPI "most recently prior to the October 1, 2009" is June, 2009, which is 117.335. The applicable CPI under the Lease

-4-

53204615.1
Case 2:21-ap-00023-MCW    Doc 9    Filed 04/22/21    Entered 04/22/21 13:24:42    Desc
Main Document    Page 4 of 14

for November 1, 2012 (the CPI most recently prior to the applicable adjustment date) is 124.128. (See SOF at ¶ 12). Pursuant to the formula stated in paragraph 4.1(b) of the Lease, the monthly Fixed Rent for years 4 through 6 is calculated as follows:

124.128 / 117.335 = 1.058

1.058 x $12,012.75 = **$12,709.49**

(See SOF at ¶ 13).

So for the first three years, the Lease provided for a fixed rent of **$12,012.75,** and for the next three years, the Lease provided for a fixed rent of **$12,709.49.**

Paragraph 4.1(c) of the Lease provides that, during the next three years of the Lease – years 7 through 9 – the Fixed Rent will be "shall be increased to an amount calculated by multiplying the Fixed Rent paid under Subsection 4.1(b) by the CPI Increase." (See SOF at ¶ 14).

The applicable CPI under the Lease for June, 2015 is 127.288. (See SOF at ¶ 15). Pursuant to the formula stated in paragraph 4.1(c) of the Lease, the monthly Fixed Rent for years 7 through 9 is calculated as follows:

127.288 / 117.335 = 1.085

1.085 x $12,709.49 = **$13,789.80**

(See SOF at ¶ 16).

To continue the summary, for the first three years, the Lease provided for a fixed rent of **$12,012.75;** for the next three years, the Lease provided for a fixed rent of **$12,709.49;** and for the following three years, the Lease provided for a fixed rent of **$13,789.80.**

Paragraph 4.1(d) of the Lease provides that, during the next (or last) year of the initial term of the Lease – year 10 – the Fixed Rent will be "shall be increased to an

amount calculated by multiplying the Fixed Rent paid under Subsection 4.1(c) by the CPI Increase." (See SOF at ¶ 17).

The applicable CPI under the Lease for August, 2018 is 139.554. (See SOF at ¶ 18). Pursuant to the formula stated in paragraph 4.1(d) of the Lease, the monthly Fixed Rent for year 10 is calculated as follows:

139.554 / 117.335 = 1.189

1.189 x $13,789.80 = **$16,396.07**

(See SOF at ¶ 19).

In summary, during the original ten year term of the Lease, for the first three years, the Lease provided for a fixed rent of **$12,012.75;** for the next three years, the Lease provided for a fixed rent of **$12,709.49;** for the following three years, the Lease provided for a fixed rent of **$13,789.80;** and for the tenth or last year, the Lease provided for a fixed rent of **$16,396.07.**

That brings us to the renewal period, which the Debtor so vigorously argued it had successfully exercised.

Paragraph 4.4 of the Lease states in part:

> <u>In the event Tenant exercises any Renewal Option</u>, Tenant agrees that for the Premises and Landlord's Furnishings, <u>Tenant promises to pay</u> (a) commencing with the Lease Year in the first Renewal Option, beginning on the first day of the one hundred twenty-first (121st) month following the Rent Commencement Date and continuing to the last day of the one hundred eightieth (180th) month following the Rent Commencement Date, a sum equal to the Fixed Rate paid under Subsection 4.1(d) increased to an amount calculated by <u>multiplying the Fixed Rent paid under Subsection 4.1(d) by the CPI Increase</u> plus percentage rent equal to two percent (2%) of Tenant's Gross Sales (as hereinafter defined) ("Percentage Rent").

(See SOF at ¶ 20)(emphasis added).

The applicable CPI under the Lease for August, 2019 is 143.760. (See SOF at ¶ 21). Pursuant to the formula stated in paragraph 4.4 of the Lease, the monthly Fixed Rent for the first five years of the Renewal Period is calculated as follows:

143.760 / 117.335 = 1.225

1.225 x $16,396.07 = **$20,085.19**

(See SOF at ¶ 22).

On top of this monthly Fixed Rent, the Debtor is also obligated to pay the cost of Landlord's insurance premiums for the Premises. (See SOF at ¶ 23). Landlord's current monthly premium is **$550.75**. (See SOF at ¶ 24). This brings the Debtor's fixed monthly rental obligation to **$20,635.94**, plus the monthly sales percentage rent, and any and all other financial obligations required by the Lease. Id.

Below is a chart of the Debtor's payment history since it renewed the Lease. (See SOF at ¶ 25). The chart reflects that each and every month since the Debtor renewed the Lease, the Debtor has failed to pay the monthly Fixed Rent of **$20,635.94** on the first day of each month, consisting of **$20,085.19**, plus the monthly insurance cost of **$550.75**. (See SOF at ¶ 26).

| Payment Date | Payment Amount |
| --- | --- |
| Oct 7, 2019 – Fixed Rent | $19,384.47 |
| Nov 5, 2019 – Fixed Rent | $19,384.47 |
| Nov 16, 2019 – Sales Percentage Rent for October | $3,043.97 |
| Dec 6, 2019 - Fixed Rent | $19,666.00 |
| Dec 18, 2019 – Sales Percentage Rent for November | $3,233.80 |
| Jan 6, 2020 – Fixed Rent | $17,659.00 |
| Jan 15, 2020 – Sales Percentage Rent for December | $2,945.68 |

| | |
|---|---|
| Feb 5, 2020 – Fixed Rent | $15,382.75 |
| Feb 18, 2020 – Sales Percentage Rent for January | $3,404.30 |
| March 5, 2020 – Fixed Rent | $15,382.75 |
| March 16, 2020 – Sales Percentage Rent for February | $3,331.26 |
| April 1, 2020 – Fixed Rent | 0 |
| April 10, 2020 – Sales Percentage Rent for March | 0 |
| May 11, 2020 – Partial Payment | $10,000 |
| May 28, 2020 – Catch-up Payment | $24,430.40 |
| May 31, 2020 – May Fixed Rent | $15,382.75 [Memo line "paid in full"] |
| June 1, 2020 – Catch-up Payment | $5,382.75 [Memo line "paid in full"] |
| June 3, 2020 – Sales Percentage Rent for May | $1,665.91 |
| June 15, 2020 – Returned payment to Debtor due to "paid in full" language. | <$20,765.50> |
| June Fixed Rent | 0 |
| June 26, 2020 – Catch-up Payment | $5,382.75 |
| June 29, 2020 – June and July Fixed Rent | $30,765.50 |
| July 9, 2020 – Sales Percentage Rent for June | $2,378.61 |
| August 4, 2020 – Fixed Rent | $15,382.75 |

| | |
|---|---|
| August 14, 2020 – Sales Percentage Rent for July | $94.88 |
| Sept 11, 2020 – Sales Percentage Rent for August | $1,062.92 |
| Sept 15, 2020 – Fixed Rent | $15,382.75 |
| Oct 5, 2020 – Fixed Rent | $15,382.75 |
| Oct 16, 2020 – Sales Percentage Rent for September | $2,453.55 |
| Nov 6, 2020 – Fixed Rent | $15,382.75 |
| Nov 14, 2020 – Sales Percentage Rent for October | $2,795.46 |
| Dec 10, 2020 – Fixed Rent | $15,382.75 |
| Dec 10, 2020 – Sales Percentage Rent for November | $2,621.88 |
| Dec 29, 2020 – Returned payment | <$15,382.75> |
| Jan 8, 2021 – Replacement payment | $15,382.75 |
| Jan 8, 2021 – Fixed Rent | $15,382.75 |
| Jan 8, 2021 – Catch-up Payment | $262.64 |
| Jan 16, 2021 – Sale Percentage Rent for December | $2,694.02 |
| Feb 5, 2021 – Fixed Rent | $15,604.81 |
| Feb 10, 2021 – Sales Percentage Rent for January | $3,560.49 |
| March 10, 2021 – Fixed Rent | $15,604.81 |

| | |
|---|---|
| March 16, 2021 – Sales Percentage Rent for February | $3,509.98 |
| April 5, 2021 – Fixed Rent | $15,504.81 |
| April 11, 2021 – Sales Percentage Rent for March | $4,465.00 |

The Landlord has notified the Debtor in writing as to amount of the monthly Fixed Rent due to Landlord during the Renewal Period, and each month, advised the Debtor that the amounts the Debtor paid to Landlord are insufficient to pay the full amounts due under the Lease. (See SOF at ¶ 27).

As the Court will remember, Landlord filed a motion, asking the Court to find that the Debtor did not have rights to renew the Lease. In turn, the Debtor argued that it was entitled to renew the Lease for another five years, and the Court agreed. But an obligation upon the Debtor that accompanies the successful renewal of the Lease is the Debtor's legal obligation to pay the required rental amounts.

If the Debtor didn't want to, or couldn't, pay all amounts due under the Lease, it had a perfect opportunity to walk away from the Lease and the attendant obligations. But in renewing and affirming the Lease, the Debtor is legally obligated to pay the amounts due. And its failure and refusal to do so amounts to a material breach, allowing Landlord to exercise its remedies as provided in the Lease.

### III. Failure to Provide Required Sales Reports.

In addition to the Fixed Rent, paragraph 4.4 of the Lease also requires the Debtor to pay to the Landlord by the tenth (10th) day of each month an amount equal to two percent (2%) of the Debtor's Gross Sales, as defined in the paragraph. (See SOF at ¶ 28).

-10-

Paragraph 4.4 of the Lease requires the Debtor to utilize sales reporting machinery to keep a report of sales, and to provide to the Landlord within ten (10) days after the end of each calendar month "in a form reasonably acceptable to Landlord a statement ('Tenant's Statement')…"enumerating all exclusions and deductions" and "shall conform to generally accepted accounting principles." (See SOF at ¶ 29).

Paragraph 4.4 of the Lease also requires the Debtor "within ninety (90) days after the end of each Lease Year during each Lease year of the Renewal Option…..a statement ('Annual Statement'), certified to Landlord as being accurate, current and complete by Tenant's regular public certified accountants, of the amount of Tenant's Gross Sales transacted during such applicable Lease Year……." (See SOF at ¶ 30).

The Debtor has failed and refused to comply with its obligations under the Lease to (i) utilize sales reporting machinery to keep a report of sales; (ii) provide to the Landlord within ten (10) days after the end of each calendar month "in a form reasonably acceptable to Landlord a statement ('Tenant's Statement')…"enumerating all exclusions and deductions" and "shall conform to generally accepted accounting principles"; and (iii) …..a statement ('Annual Statement'), certified to Landlord as being accurate, current and complete by Tenant's regular public certified accountants, of the amount of Tenant's Gross Sales transacted during such applicable Lease Year……." (See SOF at ¶ 31).

Landlord has asked numerous times for the Debtor to provide a more detailed sales report, but the Debtor has refused. Landlord has also requested proper tax documents, such as a 1009 form, but the Debtor has ignored the request. (See SOF at ¶ 32). Attached as Exhibit "4" to the SOF are the Debtor's monthly statement of sales, and last Annual Statement. As the Court can see, the Debtor's sales statements do not conform to generally accepted accounting principles; do not enumerate all exclusions

-11-

and deductions; and do not contain a verification by a certified public account. (See SOF at ¶ 33).

The sales information required to be provided by the Debtor is necessary to allow Landlord to monitor and verify the Debtor's sales figures and the accompanying two percent (2%) sales rental amounts due. Again, in renewing and affirming the Lease, the Debtor is legally obligated to comply with the Lease provisions. The Debtor's failure and refusal to provide the required sales figures and reports amounts to a material breach, allowing Landlord to exercise its remedies as provided in the Lease.

### IV. Conclusion.

The underlying facts discussed above are undisputed. Among the many breaches by the Debtor are the fundamental material breach of failing and refusing to pay the required rental amounts due under the Lease, and failing and refusing to provide required sales reports. Although other breaches remain to be determined in this matter, there is no need to wait any further as to these undisputed facts and law

Accordingly, the Landlord requests that the Court enter partial summary judgment in its favor, and against the Debtor, finding as follows:

1. As part of the financial obligations due from the Debtor to the Landlord, the Lease provides for the Debtor to pay Fixed Rent to the Landlord in the amount of **$20,635.94** on the first day of each month, consisting of **$20,085.19**, plus the monthly insurance cost of **$550.75;**

2. The Debtor has not timely paid in full these amounts due to the Landlord, which constitute a material breach of the Lease;

3. The Lease requires the Debtor (i) to utilize sales reporting machinery to keep a report of sales; (ii) to provide to the Landlord within ten (10) days after the end of each calendar month "in a form reasonably acceptable to Landlord a

-12-
53204615.1
Case 2:21-ap-00023-MCW    Doc 9    Filed 04/22/21    Entered 04/22/21 13:24:42    Desc
Main Document    Page 12 of 14

statement ('Tenant's Statement')…"enumerating all exclusions and deductions" and "shall conform to generally accepted accounting principles"; and (iii) to provide …..a statement ('Annual Statement'), certified to Landlord as being accurate, current and complete by Tenant's regular public certified accountants, of the amount of Tenant's Gross Sales transacted during such applicable Lease Year…….."

4. The Debtor has not complied with its obligations required by the Lease regarding its monthly and annual sale reports, which constitute a material breach of the Lease; and

5. As a result of the material breaches by the Debtor, the Landlord is entitled to exercise its remedies provided in the Lease.

RESPECTFULLY SUBMITTED this 22nd day of April, 2021.

**SHERMAN & HOWARD L.L.C.**

By: *s/ Brian M. Mueller*
Brian M. Mueller
7033 E. Greenway Pkwy; Suite 250
Scottsdale, AZ 85254
*Attorneys for Landlord*

# CERTIFICATE OF SERVICE

This is to certify that on this 22nd day of April, 2021 the foregoing Motion For Summary Judgment For Finding Termination of Lease was efiled and served on the following counsel of record via the Court's CM/ECF system:

Donald W. Powell
Carmichael & Powell, P.C.
6225 N. 24th St., Suite 125
Phoenix, AZ 85016
*Attorneys for Debtor*

Edward K. Bernatavicius
United States Bankruptcy Court
230 N. First Ave., No. 204
Phoenix, AZ 85003

By: *s/Lori Hinkel*
Lori Hinkel